Ricardo Silva BELLAH, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–81–00171–CR.

Court of Appeals of Texas, El Paso.

Sept. 8, 1982.

Rehearing Denied Oct. 6, 1982.

Discretionary Review Granted Jan. 5, 1983.

Bruce J. Ponder, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., El Paso, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a conviction for murder. The jury assessed punishment at thirty-five years confinement. We affirm.

In Ground of Error No. One, Appellant challenges the sufficiency of the affidavit upon which his arrest warrant was based. The affidavit was presented to a magistrate on August 19, 1980, and charged Appellant with the July 27 stabbing murder of Daniel Flynn. Appellant contends that the affidavit does not sufficiently relate the basis for a conclusion that the unnamed informant was a credible and reliable individual as required in *Aguilar v. Texas,* 378 U.S. 108, 115, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, 729 (1964).

The opening paragraph charges that the Appellant caused the death of Daniel Flynn by repeatedly stabbing him in the chest with a knife. The second paragraph relates that the affiant, Detective Leo Vasquez, personally interviewed and received a sworn statement from the informant. In the interview and sworn statement, the informant indicated that later in the morning of the day of the stabbing, the Appellant met with the informant and described the event to him in great detail. The informant challenged the truth of Appellant's assertions, and Appellant, in response, displayed his blood-stained shoes. Appellant described the location of the stabbing which the informant indicated was one-half block from his own house. Appellant further advised that he had obtained the knife from one Cary Lege, who was present at the stabbing. Appellant described the multiple stab wounds to the victim's chest and identified the victim as an Anglo male.

■ There is no question that the affidavit establishes a reliable means of knowledge on the part of the informant, satisfying the first prong of *Aguilar.* What remains is the general reliability of the informant, whose name does not appear in the affidavit. It is necessary to properly place this situation in the spectrum of reliability for hearsay affidavits. This spectrum ranges from the least reliable, the anonymous informant, unknown even to the affiant, through the known-but-confidential informant, to the named informant. The

methods of establishing the reliability of these hearsay informants vary with the situation and may be complicated by the fact that the individual is a first-time informant. In dealing with an anonymous informant, his information must invariably be independently corroborated prior to application for a warrant. The reliability of the confidential informant may be demonstrated by the affiant's averment of receiving past reliable information from the same source. With the first-time informant, the affiant must indicate to the magistrate the efforts made to ascertain his reliability—absence of criminal record, employment, reputation in the community. *Cook v. State,* 497 S.W.2d 295 (Tex.Cr.App.1973); *Wetherby v. State,* 482 S.W.2d 852 (Tex.Cr.App.1972); *Yantis v. State,* 476 S.W.2d 24 (Tex.Cr.App.1972).

In the present situation, we are dealing with an unnamed informant. We are not, however, confronted with the least reliable circumstances, the anonymous tip. Nor is this a case of the informant whose confidentiality is to be maintained, either at his own request or by intent of the police. In fact, he did subsequently testify at trial. Detective Vasquez personally interviewed the individual and took a sworn statement from him. His address was known to the officer, and is generally described in the affidavit. What is missing from the affidavit is his name. Whether this was by oversight or by belief that it was unnecessary cannot be determined. In any event, the magistrate was advised that the police department had in its custody a sworn commitment to the related facts by a known, locatable citizen. Under the circumstances, we believe that this provided sufficient indicia of reliability to enable the magistrate to issue the warrant.

In *Mena v. State,* 504 S.W.2d 410, 413 (Tex.Cr.App.1974), the Court of Criminal Appeals stated that the informant's oath supplied the element of credibility required by the second prong of *Aguilar. Mena* does not control here because the informant in that case was named in the affidavit. We find, however, that the strength of the informant's commitment in *Mena* was indis-tinguishable from that made by the informant here and described to the magistrate.

The dangers sought to be prevented by the second prong of *Aguilar* are that the police may create fictitious "informants" for the purpose of securing warrants or that unreliable informants may employ anonymity as a shield while casting false allegations for a variety of possible motives. The present affidavit, based upon the sworn statement of an unnamed citizen, provides the same safeguards against these possibilities as other judicially approved methods of indicating reliability. None of the requirements established by *Aguilar* and cases following it provide absolute protection from false information, whether accidental or intentional. They do, however, serve to protect the public from irresponsible or overbearing police intrusion. The giving of one's name, the previous submission of reliable information, the gainful employment, good reputation and clean record of a first-time informant, all indicate that the police reliance is reasonable and diligent. But none of these assure anything beyond probable cause; nor are they required to. The same is true of this affidavit. Ground of Error No. One is overruled.

In Ground of Error No. Two, Appellant contends that the trial court erred in admitting his confession into evidence. The voluntariness of the confession was first determined outside the presence of the jury. Detective Medrano testified that he administered the requisite warnings prior to interrogation. He attempted to locate a magistrate, but one was not available. He then administered a separate set of warnings normally given by El Paso magistrates. Following these warnings, Appellant signed a waiver of rights, gave a written confession, reviewed it and signed it. Medrano testified that no force, threats or coercion were employed and no request for an attorney was made prior to the confession.

Appellant testified at the *Jackson v. Denno* hearing that he spoke to his attorney prior to signing the confession, and, upon advice of counsel, told Medrano he did not wish to sign. Attorney Tom Rosas con-

firmed Appellant's version. Medrano, on rebuttal, testified that the attorney's telephone call came after the confession had been signed. The trial court found the confession voluntary. The issue was submitted to the jury by special instruction.

■ The testimony presented a factual issue as to the assertion of Appellant's Fifth Amendment and statutory rights. The evidence turned upon the credibility of the witnesses and was sufficient to justify the trial court's finding. The confession was properly admitted into evidence. Ground of Error No. Two is overruled.

■ In Grounds of Error Nos. Three and Five, Appellant complains of the prosecutor's argument at both stages of the trial that Appellant killed Daniel Flynn because he enjoyed killing. The argument was a reasonable inference from the evidence. The confession, as well as the testimony of Cary Lege and Alberto Aguirre, provided a sufficient basis for the prosecutor's interpretation.

Appellant and Richard Castillo encountered the victim on the street, at approximately 2:00 a.m. Castillo and Flynn began to argue. Castillo wanted to fight, but Flynn declined. The parties separated. Several blocks away, Appellant and Castillo met Cary Lege. Appellant borrowed Lege's knife. He and Castillo returned to Flynn and attacked him. Castillo struck Flynn in the face with a rock, and Appellant stabbed him nineteen times. Later that morning, Appellant described the events to Alberto Aguirre, the unnamed informant in the affidavit. He displayed his bloody shoes and even spoke of the possibility of killing Flynn's son. The evidence disclosed an unprovoked, brutal assault. The number of wounds, the callous portrayal of the events to Aguirre, and the contemplation of further killing provided a sufficient basis for the State's argument. Grounds of Error Nos. Three and Five are overruled.

■ In Ground of Error No. Four, Appellant asserts improper argument in referring to him as a sociopath. He contends that the term has a special meaning in the field of

psychiatry and that, since no expert psychiatric testimony was offered, the argument was outside the record. The contention is without merit. The term sociopath may have a precise meaning to psychiatric experts which is beyond the scope of lay juror understanding. It is not, however, a word which is in the exclusive domain of psychiatrists and psychologists. It is also used in the general community with a lay connotation of one whose behavior is antisocial or in opposition to the accepted norms of conduct within the culture. At no time did the prosecutor suggest evidence outside the record of any professional diagnosis of the Appellant's personality. The term sociopath was presented to the jury in its everyday usage and was based upon the same evidence used to support the description of Appellant as one who enjoys killing. Ground of Error No. Four is overruled.

The judgment is affirmed.