Ricardo Silva BELLAH, Appellant,

v.

The STATE of Texas, Appellee.

No. 936–82.

Court of Criminal Appeals of Texas,
En Banc.

July 20, 1983.

Bruce J. Ponder, El Paso, for appellant.

Steve W. Simmons, Dist. Atty. and Nick O. Martinez, Jr., Asst. Dist. Atty., El Paso, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

PER CURIAM.

A jury found appellant guilty of murder and assessed punishment at confinement for thirty five years. The El Paso Court of Appeals affirmed. *Bellah v. State,* 641 S.W.2d 641 (Tex.App.—El Paso 1982). We granted appellant's petition in order to review that court's decision regarding the sufficiency of an arrest warrant affidavit and the voluntariness of appellant's confession.

▆ Appellant attacks the arrest warrant affidavit solely on Fourth Amendment grounds; he makes no claim under the constitution or statutes of this State.[1] He contends the affidavit fails to satisfy the "ve-

---

1. The dissent faults our textual language, asserting that appellant "expressly stated that he relies upon" the State provisions mentioned.

 In his motion to suppress in the trial court, *inter alia,* appellant put forth the following propositions:

 "An affidavit issued in support of a search warrant must state sufficient facts to support

the issuance of a warrant. *Aguilar v. Texas,* 378 U.S. 108 (1964). Specifically, *Aguilar* requires that two requirements be met by providing the following sufficient information. * * * If the basis for such credibility is not established within the four corners of the affidavit, then the affidavit must fail. Art. 1, Sec. 9, Texas Constitution; Texas Code of

racity" prong of the two-pronged test articulated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). However, after submission of the case in this Court, the United States Supreme Court abandoned the two-pronged test, announced that an informant's "veracity" and "basis of knowledge," and the "reliability" of his information, while "highly relevant," should not be regarded as "entirely separate and independent requirements to be rigidly exacted in every case," but "should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is 'probable cause'...." *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).[2]

The police officer's affidavit stated that an informant, who was not named in the affidavit, met with the officer and gave him a sworn statement. Therein the informant stated that appellant had told the informant the details of his involvement in the killing the morning after it occurred. Appellant had displayed his blood-stained

shoes and had described the murder scene, which was one-half block from the informant's home. The affidavit also states that the informant's description of the killing matches other information in the officer's possession concerning the cause of death, specifically, the knife wounds in the victim's chest. Given these statements and others in the affidavit, as set out in the opinion by the court of appeals, and taking the "totality of the circumstances approach" endorsed in *Gates,* we find no Fourth Amendment violation. This ground of error is overruled.[3]

 Regarding the voluntariness and admissibility of the confession, we need only say that the trial judge believed the officer who took the statement from appellant, and he discounted the defense version of events, as set out in the opinion by the court of appeals. The trial judge is the sole judge of the weight and credibility of the witnesses, and there was sufficient evidence to support the finding of voluntariness. *Myre v. State,* 545 S.W.2d 820 (Tex.Cr.App. 1977).

Criminal Procedure, Art. 15.03, 15.04; *Ruiz v. State,* 457 S.W.2d 894 (Tex.Cr.App.1970)." Arguing the motion to the trial court, counsel for appellant called attention to the same authorities, and attributed to *Ruiz:* "When the sufficiency of an arrest warrant is challenged, the Court must block out the four corners of the affidavit..." In his first appellate brief appellant asserts: "The sufficiency of the affidavit must be determined within the four corners of the document," and cites similar authorities, substituting Article 18.01, V.A.C.C.P. for 15.03 and 15.04. Without at all mentioning the "four corners rule," the court of appeals said, "Appellant contends that the affidavit does not sufficiently relate the basis for a conclusion that the unnamed informant was a credible and reliable individual as required in *Aguilar v. Texas...*" His first reason for this Court to review that opinion is that the court of appeals "violated the standards of *Aguilar v. Texas ...,*" and in his argument he cites *Aguilar* for a requirement that the magistrate "must observe and follow the 'Four Corners Rule,'" pretermitting any state authorities on that point. Finally, in his brief on submission to this Court appellant states:

"The law set out in *Aguilar v. Texas ...* clearly requires that probable cause affida-

vits which rely on hearsay from an *anonymous* informant provide two indicia of reliability:

\* \* \* \* \* \*

It should be noted that the law is clear that the 'prongs' of *Aguilar* must be satisfied and determined within the four corners of the affidavit. [Citing Article 1, § 9; Article 18.-01; *Ruiz,* supra.]."

We are satisfied that our statement of the grounds on which appellant attacks the arrest warrant affidavit is correct.

2. *Gates* involved a search warrant, but the rationale is equally applicable to the arrest warrant in this case. *Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

3. In overruling this ground of error we rule only on the Fourth Amendment question, not on the requirements of state law, and, like the Supreme Court, "we in no way abandon *Spinelli's* concern for the trustworthiness of informers." *Gates,* supra, n. 11.

As an aside, we attach no significance to a fact mentioned by the court of appeals—that the informant later testified at trial—for obviously the magistrate could not take that fact in account.

The judgment of the court of appeals is affirmed.

MILLER and CAMPBELL, JJ., not participating.

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge, dissenting.

I am unable to agree with the majority that appellant relies solely upon the Fourth Amendment to the United States Constitution in support of his assertion that the arrest warrant affidavit is deficient. From the record of appeal and appellant's brief before this Court, he has expressly stated that he relies upon, among other things, Art. 1, Section 9, *Texas Constitution,* and Art. 18.01, V.A.C.C.P. Thus, I believe it is incorrect to state that "he makes no claim under the constitution or statutes of this State."

Appellant argues that the arrest warrant affidavit in this cause does not satisfy the underlying prongs that were stated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Also see *Spinelli v. U.S.,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). For a discussion of the "prongs" of *Aguilar,* see *Winkles v. State,* 634 S.W.2d 289 (Tex.Cr.App.1982) (On original submission).

At the time of appellant's trial, and thereafter when the El Paso Court of Appeals handed down its decision in this cause, and when this cause was argued before this Court, *Aguilar* and *Spinelli,* supra, were alive and breathing. However, since *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the holdings of *Aguilar* and *Spinelli* are no longer viable, and the decisions have been rendered lifeless by the Supreme Court—as a matter of Federal Constitutional law. Thus, because of this change in the law by the Supreme Court, the cause should be remanded to the Court of Appeals for it to reconsider the issue, in light of *Gates and* Texas law as it existed prior to *Aguilar v. Texas,* supra, and for that Court to also decide whether Texas law mandates that this Court should adopt, as a matter of Texas Constitutional law, the principles stated by the Supreme Court in *Aguilar* and *Spinelli,* supra. The parties, of course, should be granted permission to file supplemental briefs.

I further point out, as Circuit Judge Rives did in his dissenting opinion in *Hoover v. Beto,* 467 F.2d 516, 544 (5th Cir.1972), certiorari denied, 409 U.S. 1086, 93 S.Ct. 703, 34 L.Ed.2d 673 (1972), that "Aguilar announced no 'new' doctrine. That fact is demonstrated beyond cavil both by the opinion in Aguilar itself and by the opinion of the Supreme Court in *Riggan v. Virginia,* 1966, 384 U.S. 152, 86 S.Ct. 1378, 16 L.Ed.2d 431."

Furthermore, when *Aguilar v. State,* 172 Tex.Cr.R. 629, 362 S.W.2d 111 (1962), also see *Aguilar v. State,* 170 Tex.Cr.R. 189, 339 S.W.2d 898 (1960), was decided on original submission, this Court, in rejecting the defendant's contention that the search warrant affidavit in that cause was deficient, neither discussed nor referred to the Texas Constitution, Texas statutes, nor the Federal Constitution. Instead, it cited two of this Court's decisions as authority for its holding, each of which also do not cite or discuss either the Texas or Federal Constitutions. It was not until rehearing that the Texas and Federal Constitutions were injected into the opinion of *Aguilar v. State,* op. cit. The defendant's contention that the search warrant affidavit was deficient was again rejected. In reaching its holding, that the affidavit was valid, this Court first did so on State grounds. However, in support of the motion for rehearing, the defendant relied upon *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). This Court held that his reliance was misplaced, because *Mapp* was not in point to the case. Nevertheless, the Court expressly rejected the defendant's claim that the affidavit was deficient under Federal Constitutional law. In reaching that result, the Court pointed out that it was unable to see a meaningful distinction between how this Court had previously interpreted the applicable provision of the Texas Constitution and how the Supreme Court had previously

interpreted the Fourth Amendment to the United States Constitution. In arriving at its result, the Court, unquestionably, was persuaded by what its research had revealed: "We are aware of no decision of the Supreme Court of the United States holding that such an affidavit is insufficient."

Of course, the Supreme Court of the United States soon put a decision on the books, which held that the search warrant affidavit in *Aguilar v. State,* supra, was deficient as a matter of Federal Constitutional law. See *Aguilar v. Texas,* supra.

Because the Supreme Court established in *Aguilar v. Texas,* supra, a minimum Federal constitutional standard, regarding a search warrant affidavit, this Court has obediently, as it is required to do under the Federal Constitution, see Art. VI, Federal Constitution, followed *Aguilar v. Texas, supra.* See *Aguilar v. State,* 382 S.W.2d 480 (Tex.Cr.App.1964).

My research reveals that up to and including *Aguilar v. State,* supra, this Court, when it came to making the determination whether a search warrant affidavit was valid, has always been consistent. It has first looked to the Constitution and laws of this State to make that determination. If this Court determined that the affidavit was valid under the State Constitution and State laws, and the issue that the affidavit was invalid as a matter of Federal Constitutional law was presented to it, then, and only then, would it look to Federal law to resolve the issue. For a discussion on this point, see, for example, *Chapin v. State,* 107 Tex.Cr.R. 477, 296 S.W. 1095, 1096 (1927).

It is without question that neither this Court nor its members are infallible, and occasionally the Court errs in its decisions. However, that is one of the beauties of the system under which we live: If this Court renders a decision unacceptable to the citizens of this State, the citizens are free to either amend the Constitution or have the Legislature change the law upon which the decision rests. And if this Court errs in construing the Federal Constitution, as it did in *Aguilar v. State,* supra, and the defendant complains to the Supreme Court, then the Supreme Court is free to overrule that decision and apply a more liberal interpretation. Unquestionably, the Supreme Court, by its decision of *Aguilar v. Texas,* supra, made it more demanding before law enforcement officials could obtain a search warrant.

The pendulum, however, has now swung in the other direction. By its decision of *Illinois v. Gates,* the Supreme Court now believes that the obtaining of a search warrant should not be so technical, or demanding. In the future, through a change in personnel, the Supreme Court may or may not revert back to its former interpretations of the Fourth Amendment. As history has taught us, the pendulum never remains in one particular position. And that is one of the beauties of having an independent Federal judiciary; the Supreme Court is free to interpret the Federal Constitution however it sees fit. However, it is only when the Supreme Court more liberally interprets a provision of the Federal Constitution than state courts have, that state courts must adhere to the decisions of the Supreme Court. State courts are thus free to give the provisions of its respective state constitutions a more liberal meaning than the Supreme Court might, had it been deciding the issue.

Whether this Court should interpret Art. I, Section 9, of the Texas Constitution in such fashion that it will have the same meaning that the Supreme Court has given to the Fourth Amendment to the Federal Constitution is at the present time an open question. Perhaps this Court should so decide. On the other hand, it may be that this Court will eventually decide that citizens of Texas desire for this Court to mandate more stringent requirements before a search warrant may issue in order that forcible entry into a fellow citizen's residence or business may occur. Regardless of what this Court may eventually decide, as a matter of policy, the chaff should first be separated from the grain by the Court of Appeals.

Because the majority does not see fit to remand the cause to the Court of Appeals, I

dissent. To its decision that the appellant has not invoked the Texas Constitution and Texas law on the subject, I also dissent.