Roger Cerda **OLIVARRI**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–88–00536–CR.

Court of Appeals of Texas,
San Antonio.

July 12, 1989.

Richard E. Langlois, San Antonio, for appellant.

Fred G. Rodriguez, Margaret Embry, Monica Gonzalez, Jay Brandon, Criminal Dist. Attys., San Antonio, for appellee.

Before BUTTS, CHAPA and BIERY, JJ.

## OPINION

CHAPA, Justice.

Appellant, Roger C. Olivarri, was convicted by a jury for the offense of murder. The jury further found the enhancement paragraph true, answered yes to an affirmative finding of a deadly weapon, and assessed appellant punishment at forty-five years' imprisonment. Appeal has been perfected. We affirm.

The issues are:

1) whether the evidence is insufficient to sustain the conviction;

2) whether harmful error resulted by the submission of a parole instruction at the punishment phase;

3) whether harmful error resulted by the submission of an affirmative finding of a deadly weapon issue at the punishment phase without proper notice;

4) whether the trial court committed reversible error in overruling appellant's objection to the State's jury argument at the punishment phase suggesting a thrill and excitement of the killing.

Rogelio "Ray" Ruiz was found dead under a screen in a secluded area of Pue Road in Bexar County. His chest had almost 50 stab wounds and his throat had been slashed.

Joe Macias, the deceased's roommate, last saw Ruiz alive the day before his death. After spending the night with his brother, Macias returned to the trailer he shared with the deceased to find food and a pan on the floor and blood on the sink.

Vicki Kandaris, who worked at a Lone Star Ice House, saw the deceased alone at the ice house at about 8:00 p.m. the night he died. She later saw the deceased drunk at the ice house at about 11:00 p.m. in the company of appellant and Carlos Fonseca, a convicted murdered. She noticed that appellant and Fonseca were giving the deceased a "hard time," and testified that she never saw them again after they left.

Appellant's voluntary statement disclosed:

1) that appellant and Fonseca went to the deceased's trailer home and found the deceased drunk in his car;

2) that they drove around and drank beer with the deceased in his car;

3) that they returned to the deceased's trailer and finished the beer;

4) that when the deceased would not agree to take them to get more beer, Fonseca punched the deceased in the face and knocked him down;

5) that the deceased then agreed to do their bidding and went into the bathroom to wash his bloody face;

6) that when the deceased was in the bathroom, Fonseca got two knives and gave one to the appellant;

7) that they drove the deceased to an isolated area of Pue Road;

8) that when they got out of the car, Fonseca attacked the deceased and stabbed him repeatedly while the deceased pleaded that he had "learned his lesson";

9) that appellant turned away from the stabbing because he could not believe what Fonseca was doing;

10) that appellant then helped Fonseca drag the deceased to a hidden area away from the road;

11) that Fonseca told the appellant to check and see if Ruiz was dead;

12) that appellant then stabbed Ruiz several times in an open wound in his chest because he supposedly knew Ruiz was dead and appellant was afraid;

13) that they covered the body with a closet screen and left the scene in deceased's car;

14) that they drove around downtown looking "for chicks";

15) that they found some "chicks" and after talking to them, drove to Fonseca's grandmother's home, where they slept in the car;

16) that they went and disposed of the knives, abandoned Ruiz's car, and got a ride to Fonseca's home;

17) that when Fonseca's parents noticed that they had blood on their pants, appellant went home and changed;

18) that he returned to Fonseca's house to find Fonseca burning his bloody pants;

19) that after the murder, Fonseca and appellant got together and agreed on a story to give to the police; and

20) that appellant had not come forward with the truth because he was scared and confused, and would not be believed because he was an "ex-con."

Appellant's bloody pants were introduced in evidence and testimony was received that the blood found on the pants was of the same type as the deceased.

Dr. Robert Dix testified that the autopsy revealed almost 50 stab wounds to the neck, upper chest, and lower chest. Several of the neck and chest wounds were fatal wounds, and several wounds were inflicted after the victim was dead or had no blood pressure, because of the lack of bleeding around the wounds. The neck wounds appeared consistent with someone holding the victim from behind and coming across rather than getting swiped with a knife from the front. The appellant did not testify or offer any evidence.

The test in determining the sufficiency of the evidence to support a criminal conviction is the same in both direct and circumstantial evidence cases. *Dickey v. State*, 693 S.W.2d 386, 387 (Tex.Crim.App. 1984) (en banc). The standard of review requires that we look at the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Dickey v. State*, 693 S.W.2d at 387; *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex.Crim.App.1983). Every circumstantial evidence case must be tested by its own facts to determine the sufficiency of the evidence to support the conviction. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App.1984) (en banc). In a trial by jury, consideration of conflicts or contradictions will not call for reversal if

there is sufficient credible testimony to support the conviction. TEX.CODE CRIM. PROC.ANN. art. 38.04 (Vernon 1979); *Bowden v. State,* 628 S.W.2d 782, 784 (Tex. Crim.App.1982) (en banc).

"In determining whether an individual is a party to an offense and bears criminal responsibility, the court may look to events before, during, and after the commission of the offense." *Beardsley v. State,* 738 S.W.2d 681, 689 (Tex.Crim.App.1987). "[T]he complete rule is that while presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant." *Id.* at 685. "Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreements." *Burdine v. State,* 719 S.W.2d 309, 315 (Tex.Crim.App.1986).

■ The court here charged on the law of parties. The evidence, in the light most favorable to the prosecution of the actions of appellant before, during, and after the murder clearly made him a party to the offense. Further, the evidence contradicted appellant's statements which tended to minimize his participation in the murder. A rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. The point is rejected.

■ Appellant's next point of error complains about the court's submission of the parole instruction which has been declared unconstitutional by the Court of Criminal Appeals. *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1988) (on rehearing).

In *Rose,* the court held that it was error for the court to submit the parole instruction to the jury, that the error was fundamental and was preserved without objection, and that the application of TEX.R. APP.P. 81(b)(2) would decide if the error was reversible. However, in concluding that the error was harmless, the court stated:

After reading the statutory parole instruction, the trial judge also read the jury the following instruction:

> You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.

. . . .

Here, in addition to the statutory instruction not to use information concerning parole in assessing this particular appellant's punishment, the trial judge flatly told the jury [under the old law] that parole was not their concern. This is particularly significant because this was the judge's last word on the subject.

. . . .

... [T]he presumption that the jury followed the trial judge's final instruction to totally disregard parole, coupled with the particularly heinous facts of this case and appellant's prior criminal record, lead us to the conclusion that the statutory parole instruction did not affect appellant's sentence....

*Rose, supra* at 554. Although the court found these "factors which indicate that the error was harmless," they intimated that in applying Rule 81(b)(2), the reviewing court should look to the entire record. *Id.* at 554.

TEX.R.APP.P. 81(b)(2) provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

Although the court's charge does not contain the identical additional curative charge found in *Rose,* it does caution the jury "not to consider the manner in which the parole law may be applied to this particular defendant." This record also re-

flects the appellant has a prior conviction for burglary of a habitation, and the facts of this murder can be easily described as heinous and brutal.

The punishment for the crime involved here ranges from 15 to 99 years' confinement. The jury assessed punishment at 45 years. We conclude, after reviewing the evidence in the record, that the submission by the court of the unconstitutional charge on parole, beyond a reasonable doubt, made no contribution to the sentence in this case. The point is rejected.

■ Appellant argues that he suffered harmful error because of a lack of notice of the State's intent to seek an affirmative finding of the use of a deadly weapon. We disagree.

The Texas Court of Criminal Appeals, in *Ex parte Beck*, 769 S.W.2d 525, 526–27 (Tex.Crim.App.1989) (en banc), was faced with a similar complaint and concluded:

It is apparent that any allegation which avers a death *was caused* by a named weapon or instrument *necessarily includes* an allegation that the named weapon or instrument was, 'in the manner of its use ... capable of causing' (since it *did* cause) death. [Footnote omitted] Thus, [appellant] had sufficient notice that the weapon would be an issue in the State's murder prosecution. Thus, the concerns and individual constitutional guarantees elucidated in *Ex parte Patterson* [740 S.W.2d 766 (Tex.Crim.App. 1987)] are satisfied.

The indictment here read that the appellant did intentionally "cause the death of an individual ROGELIO L. RUIZ, hereinafter called complainant, by CUTTING AND STABBING THE SAID COMPLAINANT WITH A KNIFE." Thus, the appellant was sufficiently notified that the weapon would be an issue in this murder prosecution. The point is denied.

In the last point of error, appellant cites as reversible error the prosecutor's comments suggesting a thrill to the killing.

The complaint is specifically directed at the following part of the record:

... I might ask for thirty or forty years in a case where a man's wife is taken away and raped and killed, and he goes and kills that other person. But in a case as brutal as this, in a case where there was mutilation, hacking of a body, I believe you, ladies and gentlemen, can infer there was a thrill and an excitement to the killing.

MR. ROUSH: Your Honor, I object again. There has been no evidence that there was any thrill or excitement or joy.

THE COURT: Overrule the objection. Same instruction to the jury. You may proceed.

The prior instruction the court was alluding to occurred immediately before, when the court instructed:

THE COURT: The objection will be overruled. Again, I will instruct you, ladies and gentlemen of the jury, that you guide yourself from what you heard from the witness stand. What the lawyers tell you is no evidence. Stay within the record, counsel.

Proper jury argument encompasses 1) summation of the evidence, 2) reasonable deduction from the evidence, 3) answer to argument of opposing counsel and 4) pleas for law enforcement. *Good v. State*, 723 S.W.2d 734, 735 (Tex.Crim.App.1986).

■ The argument of the prosecutor complained of here could easily be classified as a reasonable deduction from the evidence. *Bellah v. State*, 641 S.W.2d 641, 644 (Tex.App.—El Paso 1982, pet. granted), *aff'd*, 653 S.W.2d 795 (Tex.Crim.App.1983). The evidence in the record revealed that this murder was committed only to teach the deceased the lesson that he was to obey the wishes of Fonseca immediately. The deceased here was stabbed repeatedly when in fact, he was doing Fonseca's bidding and pleading he had learned his lesson. The actions of appellant and Fonseca before, during, and after this murder substantiated the reasonable deduction that there was a thrill and excitement to the killing. No error has been shown.

Further, even if the argument should be considered improper, the court instructed properly in spite of overruling the objection, and the error, if any, would not require reversal. *Simpkins v. State*, 590 S.W.2d 129, 137 (Tex.Crim.App.1979). The point is rejected.

The judgment of the trial court is affirmed.