COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO. 2-05-334-CR

 

EX PARTE VICKIE DAWN JACKSON

                                                    

                                                                                                        

                                              ------------

 

           FROM THE 97TH DISTRICT
COURT OF MONTAGUE COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Introduction

Vickie Dawn Jackson appeals the trial court=s denial of pretrial habeas relief. 
In a single point, appellant complains that the trial court erred by
denying her relief because her retrial following a mistrial induced by
prosecutorial misconduct will violate the double jeopardy protections of the state
and federal constitutions.  We affirm.

                          Background
Facts & Procedural History








Appellant, a hospital nurse, was indicted for capital murder for
allegedly killing two of her patients. 
Her case was called to trial in March 2005, and the jury was seated and
sworn.  During the State=s opening statement, while the prosecutor outlined the evidence that
the State planned to present at trial, the following took place:

[PROSECUTOR]:

 

. . .
.

 

But
what=s
going toCone
question that=s
going to remain unanswered and is probably unanswerable except from perhaps the
defendant herselfC

 

[DEFENSE
COUNSEL]:  Your Honor, I=m
going to object.  That is a comment upon
the defendant=s
ability or desire to testify.

 

THE
COURT:  Sustained.

 

[DEFENSE
COUNSEL]:  We move for a mistrial, Your
Honor.  He has directly commented on the
defendant testifying or not testifying.

 

THE
COURT:  Overruled.  The jury is instructed to disregard the last
statement.

 

. . .
.

 

[PROSECUTOR]:  In mostCfortunately, the law does not
require us to prove motive.  And I want
toCwhen
a burglar or a robber or a bank robber goes into a bank and steals the money
and holds up the teller, you know why she did it.  When a drug addict goes on the street and
buys cocaine, you know why she did it.

 

Well,
when a nurse starts killing her patients, you=re
left wondering why.  You=re
going to hear from Alan Brantley, a behavioral psychologist, a scientist from
the F.B.I. who has studied serial murders, who has studied people in hospitals
who have done this type of thing.  And he=s
going to talk to you about someCabout how some of the times
they do this because they need to get control of their life.  Other things are spiraling out of control and
this is the only thing that gives them control.








 

Sure
enough, at this time, the defendant was having problems in her marriage, lost
custody of her two children.  Maybe that=s why
she did it.

 

[DEFENSE
COUNSEL]:  Again, Judge, that=s a
comment on the failure of the defendant to testify or her right not to
testify.  Speculating about why she did
it in that manner is a direct comment.

 

THE
COURT:  Overruled.

 

[PROSECUTOR]:  You=re also going to hear that
some of these patients were not the easiest patients to deal with.  Some were kind of ornery.  Maybe they said the wrong thing to her.  Maybe she said, I=ll
fix you.

 

[DEFENSE
COUNSEL]:  Judge, again, he=s
putting words in the defendant=s mouth and he=s
talking about things that might come from Vickie Jackson.  That is a direct comment on the defendant=s
right to testify or not testify.

 

THE
COURT:  Sustained.  The jury is instructed to disregard.

 

[DEFENSE
COUNSEL]:  I would move for mistrial,
Judge.

 

THE COURT: 
Denied. 

After the prosecutor concluded his opening statement, the trial court
recessed the jury and asked to speak to the lawyers in chambers.  Appellant reurged her earlier motions for
mistrial Aon the basis
of the prosecutor commenting on potential failure of the defendant to testify .
. . or upon her right to testify or not to testify,@ and the trial court granted a mistrial.













Thereafter, appellant filed a
petition for writ of habeas corpus, in which she argued that the Double
Jeopardy Clauses of the United States and Texas Constitutions bar her
retrial.  After an evidentiary hearing,
the trial court entered findings of fact and conclusions of law[2]
and denied relief.  This appeal
followed.  Appellant=s Point on Appeal

In her sole point on appeal, appellant asserts that, because the
prosecutor=s misconduct
forced her to successfully move for a mistrial of her first capital murder
trial, her retrial for this offense is barred by the double jeopardy
protections of both the federal and state constitutions.  She complains that the trial court erred by
denying her petition for writ of habeas corpus on double jeopardy grounds.

        Double Jeopardy Bar to
Retrial Following Prosecutorial Misconduct








The Double Jeopardy Clauses of our federal and state constitutions
protect a criminal defendant from repeated prosecutions for the same offense.[3]  Double jeopardy principles bar retrial of a
defendant on a criminal charge if prosecutorial misconduct forced the mistrial.[4]  Under the federal constitution, retrial is
barred only if the prosecutor intentionally caused a mistrial.[5]  Under the Texas Constitution, however, the
double jeopardy bar also includes those situations in which the prosecutor was
aware of but consciously disregarded the risk that his conduct would require a
mistrial at the defendant=s request.[6]








To erect a jeopardy bar, it is not sufficient that the prosecutor=s incurably prejudicial misconduct was the result of inadvertence,
sloppiness, or even simple negligence.[7]
 A prosecutor=s blunder that precipitates a successful motion for mistrial does not
bar a retrial.[8]  It is only when the defendant is compelled to
move for a mistrial because Athe prosecutor deliberately or recklessly crossed >the line between legitimate adversarial gamesmanship and manifestly
improper methods=@ that the double jeopardy provision bars a retrial.[9]  Thus, in determining whether the Double
Jeopardy Clause prohibits retrial after a defendant=s successful mistrial request on the ground of prosecutorial
misconduct, the trial court must decide:

(1)
whether manifestly improper prosecutorial misconduct provoked the mistrial;

 

(2)
whether the mistrial was required because the prejudice produced from the
misconduct could not be cured by an instruction to disregard; and

 

(3)
whether the prosecutor engaged in the misconduct with the intent to goad the
defendant into requesting a mistrial or with conscious disregard for a
substantial risk that the trial court would be required to declare a mistrial.[10]

 

The habeas applicant bears the burden of proving all three prongs of
this inquiry by a preponderance of the evidence.[11]

In this case, we consider the third prong first because it is
dispositive of this appeal.

               Factors
Considered in Assessing Prosecutor=s Mens Rea








In deciding whether the prosecutor=s alleged misconduct was committed with the requisite intent or
recklessness, trial and appellate courts should focus primarily on the
objective facts and circumstances surrounding the events that led to the
mistrial.[12]  Some of the objective facts and circumstances
that trial and appellate courts might consider in assessing the prosecutor=s mens rea include, but are not limited to:

(1)  Was the misconduct a reaction to abort a
trial that was Agoing
badly for the State@?  In other words, at the time that the
prosecutor acted, did it reasonably appear that the defendant would likely
obtain an acquittal?

 

(2)  Was the misconduct repeated despite
admonitions from the trial court?

 

(3)  Was the conduct Aclearly
erroneous@?

 

(4)
Did the prosecutor provide a reasonable, Agood faith@
explanation for the conduct?

 

(5)  Was there a legally or factually plausible
basis for the conduct, despite its ultimate impropriety?

 

(6)  Were the prosecutor=s
actions leading up to the mistrial consistent with inadvertence, lack of
judgment, or negligence, or were they consistent with intentional or reckless
misconduct?[13]

 








In reviewing the trial court=s decision, we review the facts in the light most favorable to the
trial court=s ruling and
should uphold it absent an abuse of discretion.[14]  We Aafford almost total deference to a trial court=s determination of the historical facts that the record supports,
especially when the trial court=s fact findings are based on an evaluation of credibility and
demeanor.@[15]  We also afford that same level
of deference to a trial court=s ruling on A>application of law to fact questions,= also known as >mixed
questions of law and fact,= if the resolution of those ultimate questions turns on an evaluation
of credibility and demeanor.@[16]  But we review de novo those Amixed questions of law and fact@ that do not depend upon credibility and demeanor.[17]

Applying these principles, we now consider whether the trial court
abused its discretion by denying appellant habeas relief.

Was the Trial Going Badly for the State?








First, the trial court found that Guerrero=s statements were not a reaction to a trial that was going badly for
the State, and the record supports this finding.  Indeed, appellant concedes that Ait cannot be said that the trial was going badly [for the State]@; but she contends that it was Aevident . . . that the prosecutors anticipated their fair share of
obstacles on the road to conviction,@ because the State=s case was A[d]ependent
chiefly upon circumstantial evidence and novel medical testimony supported by
extraneous offenses.@        Before making the contested statements,
however, Guerrero had informed the jury that the State=s evidence would include appellant=s confession, testimony from two eyewitnesses, one of whom was
appellant=s former
hospital patient, a syringe found in appellant=s garbage that had tested positive for mivacurium chloride, the
death-causing drug, a video of appellant taking mivacurium chloride from the
hospital crash cart, and scientific evidence showing that tissue taken from ten
people who had died at the hospital had tested positive for the drug.  Further, Guerrero testified at the habeas
hearing that he and co-counsel liked the jury they had chosen, Awere confident with the case@ and Aready to go
forward,@ and that Athe last
thing [he] ever wanted to do was mess this thing up.@ 

Was
the Misconduct Repeated Despite Trial Court 

Admonitions
and Clearly Erroneous?

 








Next, we consider whether the misconduct was repeated despite the
trial court=s
admonitions.[18]  The trial court sustained appellant=s objections to two of Guerrero=s comments during his opening statement on the basis that the remarks
were comments on appellant=s right not to testify.  These
remarks were, ABut what=s going toCone question
that=s going to remain unanswered and is probably unanswerable except from
perhaps the defendant herselfCA and AMaybe she
said, I=ll fix you.@

A prosecutor cannot comment on the failure of an accused to testify.[19]
Such a comment violates the privilege against self‑incrimination and the
freedom from being compelled to testify contained in the Fifth Amendment of the
United States Constitution and article I, section 10 of the Texas Constitution.[20]








In determining
whether a prosecutor=s comment constituted an impermissible
reference to an accused=s failure to testify, we must consider
whether the language used was manifestly intended or was of such a character
that the jury naturally and necessarily would have considered it to be a
comment on the defendant=s failure to testify.[21]  The offending language must be viewed from
the jury=s standpoint, and
the implication that the comment referred to the accused=s failure to
testify must be clear.[22]  In applying this standard, the context in
which the comment was made must be analyzed to determine whether the language
used was of such character.[23]  A mere indirect or implied allusion to the
defendant=s failure to testify does not violate the
accused=s right to remain
silent.[24]








If the prosecutor=s remark calls to the jury=s attention the
absence of evidence that only the defendant=s testimony could
supply, the comment is improper; but if the remark reasonably can be construed
to refer to the defendant=s failure to present evidence other than
her own testimony, the comment is not improper.[25]  An argument
that only the defendant can provide evidence of her motive for the charged
offense is an improper comment on the defendant=s failure to testify.[26]  As appellant concedes, however, an argument
regarding an accused=s possible
motive for committing a crime is not improper if it is evident that the
argument refers to evidence other than the accused=s testimony.[27]








In this case, neither of Guerrero=s remarks was a comment on appellant=s failure to testify because no evidence had been presented in
the case.[28]  Nonetheless, the first commentCABut what=s going toCone question that=s going to remain unanswered and is probably unanswerable except from
perhaps the defendant herselfCA violated appellant=s constitutional and statutory rights not to testify because it
informed the jury that there was one question in the case that probably only
appellant could answer.[29]  For this same reason, this comment was
clearly erroneous.[30]








Guerrero=s other
statement presents a much closer call. 
At the habeas hearing, Guerrero testified that his other statement, AMaybe she said, I=ll fix you@ did not
refer to appellant=s possible
testimony, but to testimony that the State planned to present through Nurse
Donna McIver, one of appellant=s co-workers.  Guerrero
testified that McIver had allegedly overheard appellant say, AI=ll fix you@ while overseeing the Aornery@ patients
that she was accused of killing. 
Guerrero stated that Amaybe she said@ referred to
what appellant had said while working at the hospital, not to what she might
say at trial.  Guerrero acknowledged that
he did not define who would be saying what, but testified that he Afelt comfortable,@ given the context of his remarks, that the jury would understand that
this testimony would come from the patients= families and people who worked at the hospital. 

The
context of Guerrero=s
comment was,

 

You=re also
going to hear that some of these patients were not the easiest patients to deal
with.  Some were kind of ornery.  Maybe they said the wrong thing to her.  Maybe she said, I=ll fix you.

We do not believe this comment or its context informed the jury
whether appellant or someone else would be the source of this information.  Thus, the comment was, at most, an indirect
or implied allusion to appellant=s right not to testify and did not violate her right to remain silent.[31]  Further, even assuming that the comment was a
direct comment on appellant=s right not to testify, and therefore improper, as we discuss more
fully below, Guerrero provided a reasonable, good faith explanation for his
conduct.

Did
the Prosecutor Provide a Reasonable, Good Faith Explanation For His
Conduct?  Was There a Legally or
Factually Plausible Basis For It?

 








At the hearing, Guerrero testified at length regarding why he had made
the improper comments.  He testified
that, at the time of trial, he=d been licensed to practice law for sixteen months and had never made
an opening statement in a capital murder case, except for this case.  

Regarding the first comment, Guerrero testified that he had not
intended to make it at all.  He explained
that, when asked by FBI agent David Burns, AWhy did you do this?  What did
you commit these crimes?@ appellant=s response was, AI don=t know.@  The trial court had ruled at a pretrial
hearing that this evidence was admissible; therefore, the State planned to use
it at trial. According to Guerrero, he was not challenging appellant to
testify, and he did not expect her to explain why she had committed the crimes
because she had already said that she did not know why.  Instead, the point he wanted to get across to
the jury was,

That ultimately, we would never really
know why she did it, but then here is the evidence as to why and as a jury, you
get to decide.  Maybe she did it for Ax@ reason, and
maybe she did it for Ay@ reason, but I think regardless of why you think she did it, you=re all going to conclude that she did. 

Thus, Guerrero testified that he had intended to limit his first
comment to, Aone question
[is] going to remain unanswered and is probably unanswerable.@  He explained as follows:

In
the heat of the moment . . . I added the Aexcept for perhaps the
defendant herself,@
something that I did not plan on saying. . . . 
I don=t
know why.  I wish I hadn=t
said it.@ 

 

. . .
.

 

Without
a doubt [I believe I could have worded the question better.]  I wish I had stopped at Ait=s
probably unanswerable@ as I
intended to instead of adding Aexcept from the defendant
herself.@








. . .
.

 

I
made a mistake and I regret doing so.

 

. . .
.

 

I do
wish I had worded it differently. 

 

. . .
.

 

In the heat of an opening statement or in
the heat of any part of your life, you say things and do things that you regret
later. . . .  Unfortunately, those six
words were . . . a mistake that I wish I had not said. 

As further evidence that he had not intended to make the first
comment, Guerrero presented the outline of his opening statement and a written
opening statement that another, more experienced, trial attorney had provided
him as a guide.  Neither of these
documents contains any reference to the phrase, Ais probably unanswerable except from perhaps the defendant herself.@  Even defense counsel noted, A[O]bviously, the words, >except from the defendant herself,= [are] not in your outline?@ 

Further, despite acknowledging the impropriety of the first statement,
Guerrero testified that, had defense counsel not objected, 

I don=t
even know if I would have caught myself saying it.  Because, you know, it wasn=t
something I intended on saying, it came out during the flow of the opening
statement.  You=re 15
minutes in and the adrenaline is going, so had you not objected, it may not
have even crossed my mind what had just come out of my mouth.

 

. . .
.








 

And I
heard the content of your objection, it was sustained, and then I started
thinking, you know, oh, expletive. 

 

Regarding the second statement, we have previously discussed Guerrero=s explanation for making itCthat it was based on evidence that the State intended to present
through Nurse McIver, one of appellant=s coworkers.  In addition,
Guerrero explained,

The second statement I made was
qualitatively different than the first statement.  It was a comment about evidence that would be
presented.  So as I=m making that statement, I=m not evenCI=m not thinking of it as doing it again [i.e., commenting on the
defendant=s right not
to testify] because I see this as very different.  The AI=ll fix you,@ is something I knew would come into evidence by Mrs. McIver. 

We hold that this evidence supports the trial court=s finding that Guerrero provided a reasonable, good faith explanation
for his opening statement comments. 
Guerrero was a relatively inexperienced attorney who had never made an
opening statement in a capital murder case before.  He repeatedly stated that he had not intended
to make the first comment at all, that it was a mistake, and that he wished he
had never said it.  The trial court was
free to believe this testimony.[32]








Guerrero also explained that, although he had intended to make the
second statement, based on the context in which it was made he did not believe
the jury would take it as a reference to testimony that only appellant could
provide, and he knew the State intended to offer the evidence through another
witness besides appellant.  Accordingly,
Guerrero had a factual basis for making the second comment other than to refer
to appellant=s possible
testimony.

Were
the Prosecutor=s
Actions Leading Up to the Mistrial Consistent With Inadvertence, Lack of
Judgment, or Negligence, or Were They Consistent With Intentional or Reckless
Misconduct?

 

In light of all the factors and evidence we have discussed, we hold
that the trial court properly concluded that Guerrero Adid not engage in conduct with the intent to goad [appellant] into
requesting a mistrial or act with conscious disregard of a substantial risk
that the Court would be required to declare a mistrial.@  At the time the mistrial was
declared, Guerrero had made only two comments that the trial court had ruled
were improper comments on appellant=s right not to testify.  One of
those comments was clearly improper, but Guerrero testified that he had not
intended to make it and wished he had never said it.  The other comment had a factual basis and was
not of such a character that the jury naturally and necessarily would have
considered it to be a comment on appellant=s right not to testify.[33]








Further, the record shows that the trial was not going badly for the
State when the comments were made. 
Indeed, Guerrero testified that he and co-counsel liked the jury they
had chosen, that they were Awere confident with the case@ and Aready to go
forward,@ and that Athe last
thing [he] ever wanted to do was mess this thing up.@ 

In short, the evidence presented at the habeas hearing shows that
Guerrero=s improper conduct was a prosecutorial blunder that was the result of
inadvertence, sloppiness, or even simple negligence.[34]  Therefore, we hold that the trial court did
not abuse its discretion by concluding that appellant=s retrial will not violate federal and state double jeopardy
protections and by denying appellant habeas relief.

We overrule appellant=s point and affirm the trial court=s judgment.

 

 

 

PER
CURIAM

 

PANEL A:   CAYCE, C.J.; GARDNER and WALKER, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 6, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
trial court made the following findings of fact and conclusions of law, among
others:

 

                                       FINDINGS
OF FACT

 

7.  That on March 14, 2005, Assistant Attorney
General Ralph Guerrero made the opening statement for the State of Texas and
that he had never before given an opening statement or participated in a
capital murder trial.

 

. . .
.

 

13.  That Mr. Guerrero, a Yale graduate, and a
member of the Attorney General=s Prosecutor=s
Assistance Unit, knew the provisions of the Texas and U.S. Constitutions and
Texas Code of Criminal Procedure, regarding the Applicant=s
right not to testify and his duty not to make statements that might violate
Applicant=s
fifth amendment rights.

 

. . .
.

 

15.  Mr. Guerrero testified at the hearing [on the
petition for writ of habeas corpus] and explained his thought process and
intentions when he made the comments during opening statement.

 

. . .
.

 

25.  The statements by Mr. Guerrero were not a
reaction to a trial that was going badly for the State.

 

. . .
. 

 

26.  Mr. Guerrero provided a reasonable, good
faith explanation for his opening statement comments during his testimony in
the writ hearing.

 

                                    CONCLUSIONS
OF LAW

 

1.  The statements made by Mr. Guerrero were not
manifestly improper but were the result of inadvertence or an enthusiastic
trial presentation by a relatively inexperienced trial attorney.

 

2. 
Mr. Guerrero did not engage in the conduct with the intent to goad the
Applicant into requesting a mistrial or act with conscious disregard of a
substantial risk that the Court would be required to declare a mistrial. 





[3]Oregon
v. Kennedy, 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982);
Bauder v. State, 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) [Bauder I];
see U.S. Const. amend. V (Anor
shall any person be subject to the same offence to be twice put in jeopardy of
life or limb@); Tex. Const. art. I, ' 14 (ANo
person, for the same offense, shall be put twice in jeopardy of life or
liberty.A).





[4]Ex
parte Peterson, 117 S.W.3d 804, 810-11 (Tex. Crim. App. 2003).





[5]Kennedy, 456
U.S. at 675-76, 102 S. Ct. at 2089.





[6]Bauder
I, 921 S.W.2d at 699; see Peterson, 117 S.W.3d at 814.





[7]Peterson, 117
S.W.3d at 817.





[8]Id.  It is the right to appeal, not the double
jeopardy clause, that protects defendants from trial error.  Id. 
AThe
double jeopardy clause serves not to punish prosecutorial misconduct; it simply
ensures that the defendant, not the government, gets to choose whether to go to
verdict.@  Id.





[9]State
v. Lee, 15 S.W.3d 921, 923 (Tex. Crim. App. 2000) (quoting Ex parte
Bauder, 974 S.W.2d 729, 732 (Tex. Crim. App. 1998) [Bauder II]).





[10]Peterson, 117
S.W.3d at 816‑17.





[11]Id. at
818.





[12]Id.





[13]Id. at
818-19.





[14]Id. at
819.





[15]Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The trial court may accept or reject any or
all of a witness=s
testimony.  Alvarado v. State, 853
S.W.2d 17, 23 (Tex. Crim. App. 1993). 
Further, although findings are not required, Aa
trial judge is well-advised to set out his factual findings on the record in
support of his ruling on a . . . double jeopardy motion . . . so that [the
court=s]
ultimate factual and legal conclusions are clear to the parties and the
reviewing courts.@  Peterson, 117 S.W.3d at 818.





[16]Guzman, 955
S.W.2d at 89.





[17]Id.;
see Peterson, 117 S.W.3d at 819.





[18]In
assessing this factor, we do not consider any comments that preceded appellant=s
objections or to which appellant=s objections were overruled,
because they are not Amisconduct
repeated despite admonitions from the trial court.@  Peterson, 117 S.W.3d at 818.  Likewise, we do not consider statements to
which appellant objected for reasons other than the ground on which the
mistrial was requested and grantedCparticularly if they were not
raised in the trial court as grounds for granting habeas relief.  See Wead v. State, 129 S.W.3d 126, 130
(Tex. Crim. App. 2004) (holding that a complaint on appeal must be the same as
that raised at trial).





[19]Bustamante
v. State, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001); see
Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon
2005). 





[20]Bustamante, 48
S.W.3d at 764.





[21]Tex. Code
Crim. Proc. Ann. art.
38.08; see Bustamante, 48 S.W.3d at 765; Fuentes v. State, 991
S.W.2d 267, 275 (Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999).





[22]Bustamante, 48 S.W.3d at 765; Swallow v.
State, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992).





[23]Bustamante, 48 S.W.3d at 765.





[24]Wead, 129 S.W.3d at 130; Patrick v.
State, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995), cert. denied,
517 U.S. 1106 (1996).





[25]Fuentes, 991
S.W.2d at 275; Wolfe
v. State, 917 S.W.2d 270, 279 (Tex. Crim. App. 1996); Madden v. State,
799 S.W.2d 683, 700 (Tex. Crim. App. 1990), cert. denied, 499 U.S. 954
(1991).





[26]Nethery v. State, 692 S.W.2d 686, 703 (Tex. Crim.
App. 1985), cert. denied, 474 U.S. 1110 (1986); see Lee v. State,
628 S.W.2d 70, 71 (Tex. Crim. App. [Panel Op.] 1982) (holding prosecutor=s argument that only defendant knew his
motive for illegally possessing firearm was improper comment on defendant=s
failure to testify), abrogated on other grounds, Madden v. State,
799 S.W.2d 683 (Tex. Crim.App. 1990); Myers v. State, 573 S.W.2d 19,
20-21 (Tex. Crim. App. [Panel Op.] 1978) (holding prosecutor=s
argument that only defendant or his codefendant knew defendant=s
possible motive for possessing 269 pounds of marijuana was improper comment on
defendant=s
failure to testify).





[27]Appellant
acknowledges that A[m]otive
may, of course, be appropriately argued if supported by competent evidence.@  See Newhouse v. State, 420 S.W.2d 729,
731-32 (Tex. Crim. App. 1967) (holding prosecutor=s
opening statement that Athe
only reason the defendant did this was because [the victim] had gotten herself
a better man@ was
proper because it was supported by testimony from victim=s
brother later presented at trial); see also Plunkett v. State, 580
S.W.2d 815, 825 (Tex. Crim. App. 1979) (op. on reh=g)
(holding prosecutor=s
closing argument that accused may have killed child because child interfered
with relationship between accused and child=s mother was proper as an
inference from the evidence), disagreed with on other grounds, Williams v.
State, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982);  Bellah v. State, 641 S.W.2d 641, 644
(Tex. App.CEl
Paso 1982) (holding prosecutor=s closing argument that
defendant killed victim because he enjoyed killing was a reasonable inference
from the evidence), aff=d, 653
S.W.2d 795 (Tex. Crim. App. 1983).





[28]Further,
Guerrero testified that at the time he made the comment, he Ahad
no idea@
whether appellant would testify at trial. 
He testified that defense counsel had Aintimated@ that
appellant would testify, but that he (Guerrero) did not know whether she
actually would.  The trial court found that,
A[a]t
the time that Mr. Guerrero made his opening statement the Applicant had not
made the decision as to whether to exercise her right to refuse to testify[;]
therefore, neither the State nor the jury could have been aware of whether she
would or would not exercise that right.@  Appellant does not challenge this finding on
appeal.





[29]See
Fuentes, 991 S.W.2d at 275; Madden, 799 S.W.2d at
700 (both holding that a comment is improper if it directs the jury=s
attention to information that only the defendant could supply).





[30]Peterson, 117
S.W.3d at 819; see Lee, 15 S.W.3d at 925-26 (holding that an improper
comment regarding the defendant=s desire to remain silent was
not clearly erroneous when based on an unsettled area of the law).





[31]See
Wead, 129 S.W.3d at 130; Patrick, 906 S.W.2d at 490-91.





[32]See
Alvarado, 853 S.W.2d at 23.





[33]See
Bustamante, 48 S.W.3d at 765; see also Plunkett, 580
S.W.2d at 825; Newhouse, 420 S.W.2d at 731-32; Bellah, 641 S.W.2d
at 644 (all holding that an argument regarding an accused=s
possible motive is not improper if it refers to evidence other than the accused=s
testimony).





[34]See
Peterson, 117 S.W.3d at 817.