EX PARTE VICKIE DAWN JACKSON

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-334-CR

EX PARTE VICKIE DAWN JACKSON

------------

FROM THE 97TH DISTRICT COURT OF MONTAGUE COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Vickie Dawn Jackson appeals the trial court’s denial of pretrial habeas relief.  In a single point, appellant complains that the trial court erred by denying her relief because her retrial following a mistrial induced by prosecutorial misconduct will violate the double jeopardy protections of the state and federal constitutions.  We affirm.

Background Facts & Procedural History

Appellant, a hospital nurse, was indicted for capital murder for allegedly killing two of her patients.  Her case was called to trial in March 2005, and the jury was seated and sworn.  During the State’s opening statement, while the prosecutor outlined the evidence that the State planned to present at trial, the following took place:

[PROSECUTOR]:

. . . .

But what’s going to—one question that’s going to remain unanswered and is probably unanswerable except from perhaps the defendant herself—

[DEFENSE COUNSEL]:  Your Honor, I’m going to object.  That is a comment upon the defendant’s ability or desire to testify.

THE COURT:  Sustained.

[DEFENSE COUNSEL]:  We move for a mistrial, Your Honor.  He has directly commented on the defendant testifying or not testifying.

THE COURT:  Overruled.  The jury is instructed to disregard the last statement.

. . . .

[PROSECUTOR]:  In most—fortunately, the law does not require us to prove motive.  And I want to—when a burglar or a robber or a bank robber goes into a bank and steals the money and holds up the teller, you know why she did it.  When a drug addict goes on the street and buys cocaine, you know why she did it.

Well, when a nurse starts killing her patients, you’re left wondering why.  You’re going to hear from Alan Brantley, a behavioral psychologist, a scientist from the F.B.I. who has studied serial murders, who has studied people in hospitals who have done this type of thing.  And he’s going to talk to you about some—about how some of the times they do this because they need to get control of their life.  Other things are spiraling out of control and this is the only thing that gives them control.

Sure enough, at this time, the defendant was having problems in her marriage, lost custody of her two children.  Maybe that’s why she did it.

[DEFENSE COUNSEL]:  Again, Judge, that’s a comment on the failure of the defendant to testify or her right not to testify.  Speculating about why she did it in that manner is a direct comment.

THE COURT:  Overruled.

[PROSECUTOR]:  You’re also going to hear that some of these patients were not the easiest patients to deal with.  Some were kind of ornery.  Maybe they said the wrong thing to her.  Maybe she said, I’ll fix you.

[DEFENSE COUNSEL]:  Judge, again, he’s putting words in the defendant’s mouth and he’s talking about things that might come from Vickie Jackson.  That is a direct comment on the defendant’s right to testify or not testify.

THE COURT:  Sustained.  The jury is instructed to disregard.

[DEFENSE COUNSEL]:  I would move for mistrial, Judge.

THE COURT:  Denied. 

After the prosecutor concluded his opening statement, the trial court recessed the jury and asked to speak to the lawyers in chambers.  Appellant reurged her earlier motions for mistrial “on the basis of the prosecutor commenting on potential failure of the defendant to testify . . . or upon her right to testify or not to testify,” and the trial court granted a mistrial.

Thereafter, appellant filed a petition for writ of habeas corpus, in which she argued that the Double Jeopardy Clauses of the United States and Texas Constitutions bar her retrial.  After an evidentiary hearing, the trial court entered findings of fact and conclusions of law
(footnote: 2) and denied relief.  This appeal followed.   
Appellant’s Point on Appeal

In her sole point on appeal, appellant asserts that, because the prosecutor’s misconduct forced her to successfully move for a mistrial of her first capital murder trial, her retrial for this offense is barred by the double jeopardy protections of both the federal and state constitutions.  She complains that the trial court erred by denying her petition for writ of habeas corpus on double jeopardy grounds.

Double Jeopardy Bar to Retrial Following Prosecutorial Misconduct

The Double Jeopardy Clauses of our federal and state constitutions protect a criminal defendant from repeated prosecutions for the same offense.
(footnote: 3)  Double jeopardy principles bar retrial of a defendant on a criminal charge if prosecutorial misconduct forced the mistrial.
(footnote: 4)  Under the federal constitution, retrial is barred only if the prosecutor intentionally caused a mistrial.
(footnote: 5)  Under the Texas Constitution, however, the double jeopardy bar also includes those situations in which the prosecutor was aware of but consciously disregarded the risk that his conduct would require a mistrial at the defendant’s request.
(footnote: 6)
 To erect a jeopardy bar, it is not sufficient that the prosecutor’s incurably prejudicial misconduct was the result of inadvertence, sloppiness, or even simple negligence.
(footnote: 7)  A prosecutor’s blunder that precipitates a successful motion for mistrial does not bar a retrial.
(footnote: 8)  It is only when the defendant is compelled to move for a mistrial because “the prosecutor deliberately or recklessly crossed ‘the line between legitimate adversarial gamesmanship and manifestly improper methods’”
 that the double jeopardy provision bars a retrial.
(footnote: 9)  Thus, i
n determining whether the Double Jeopardy Clause prohibits retrial after a defendant’s successful mistrial request on the ground of prosecutorial misconduct, the trial court must decide:

(1) whether manifestly improper prosecutorial misconduct provoked the mistrial;

(2) whether the mistrial was required because the prejudice produced from the misconduct could not be cured by an instruction to disregard; and

(3) whether the prosecutor engaged in the misconduct with the intent to goad the defendant into requesting a mistrial or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial.
(footnote: 10)

The habeas applicant bears the burden of proving all three prongs of this inquiry by a preponderance of the evidence.
(footnote: 11)
 In this case, we consider the third prong first because it is dispositive of this appeal.

Factors Considered in Assessing Prosecutor’s Mens Rea

In deciding whether the prosecutor’s alleged misconduct was committed with the requisite intent or recklessness, trial and appellate courts should focus primarily on the objective facts and circumstances surrounding the events that led to the mistrial.
(footnote: 12)  Some of the objective facts and circumstances that trial and appellate courts might consider in assessing the prosecutor’s mens rea include, but are not limited to:

(1)  Was the misconduct a reaction to abort a trial that was “going badly for the State”?  In other words, at the time that the prosecutor acted, did it reasonably appear that the defendant would likely obtain an acquittal?

(2)  Was the misconduct repeated despite admonitions from the trial court?

(3)  Was the conduct “clearly erroneous”?

(4) Did the prosecutor provide a reasonable, “good faith” explanation for the conduct?

(5)  Was there a legally or factually plausible basis for the conduct, despite its ultimate impropriety?

(6)  Were the prosecutor’s actions leading up to the mistrial consistent with inadvertence, lack of judgment, or negligence, or were they consistent with intentional or reckless misconduct?
(footnote: 13)

In reviewing the trial court’s decision, we review the facts in the light most favorable to the trial court’s ruling and should uphold it absent an abuse of discretion.
(footnote: 14)  We “afford almost total deference to a trial court’s determination of the historical facts that the record supports, especially when the trial court’s fact findings are based on an evaluation of credibility and demeanor.”
(footnote: 15)  We also afford that same level of deference to a trial court’s ruling on “‘application of law to fact questions,’ also known as ‘mixed questions of law and fact,’ if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.”
(footnote: 16)  But we review de novo those “mixed questions of law and fact” that do not depend upon credibility and demeanor.
(footnote: 17)
 Applying these principles, we now consider whether the trial court abused its discretion by denying appellant habeas relief.

Was the Trial Going Badly for the State?

First, the trial court found that Guerrero’s statements were not a reaction to a trial that was going badly for the State, and the record supports this finding.  Indeed, appellant concedes that “it cannot be said that the trial was going badly [for the State]”; but she contends that it was “evident . . . that the prosecutors anticipated their fair share of obstacles on the road to conviction,” because the State’s case was “[d]ependent chiefly upon circumstantial evidence and novel medical testimony supported by extraneous offenses.” Before making the contested statements, however, Guerrero had informed the jury that the State’s evidence would include appellant’s confession, testimony from two eyewitnesses, one of whom was appellant’s former hospital patient, a syringe found in appellant’s garbage that had tested positive for mivacurium chloride, the death-causing drug, a video of appellant taking mivacurium chloride from the hospital crash cart, and scientific evidence showing that tissue taken from ten people who had died at the hospital had tested positive for the drug.  Further, Guerrero testified at the habeas hearing that he and co-counsel liked the jury they had chosen, “were confident with the case” and “ready to go forward,” and that “the last thing [he] ever wanted to do was mess this thing up.” 

Was the Misconduct Repeated Despite Trial Court 

Admonitions and Clearly Erroneous?

Next, we consider whether the misconduct was repeated despite the trial court’s admonitions.
(footnote: 18)  The trial court sustained appellant’s objections to two of Guerrero’s comments during his opening statement on the basis that the remarks were comments on appellant’s right not to testify.  These remarks were, “But what’s going to—one question that’s going to remain unanswered and is probably unanswerable except from perhaps the defendant herself—“ and “Maybe she said, I’ll fix you.”

A prosecutor cannot comment on the failure of an accused to testify.
(footnote: 19) Such a comment violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and article I, section 10 of the Texas Constitution.
(footnote: 20)
 In determining whether a prosecutor’s comment constituted an impermissible reference to an accused’s failure to testify, we must consider whether the language used was manifestly intended or was of such a character that the jury naturally and necessarily would have 
considered it to be a comment on the defendant’s failure to testify.
(footnote: 21)  The offending language must be viewed from the jury’s standpoint, and the implication that the comment referred to the accused’s failure to testify must be clear.
(footnote: 22)  
In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.
(footnote: 23) 
 A mere indirect or implied allusion to the defendant’s failure to testify does not violate the accused’s right to remain silent.
(footnote: 24)
 I
f the prosecutor’s remark calls to the jury’s attention the absence of evidence that only the defendant’s testimony could supply, the comment is improper; but if the remark reasonably can be construed to refer to the defendant’s failure to present evidence other than her own testimony, the comment is not improper.
(footnote: 25)  
An argument that only the defendant can provide evidence of her motive for the charged offense is an improper comment on the defendant’s failure to testify.
(footnote: 26)  As appellant concedes, however, an argument regarding an accused’s possible motive for committing a crime is not improper if it is evident that the argument refers to evidence other than the accused’s testimony.
(footnote: 27)
 In this case, neither of Guerrero’s remarks was a comment on appellant’s 
failure
 to testify because no evidence had been presented in the case.
(footnote: 28)  Nonetheless, the first comment—“But what’s going to—one question that’s going to remain unanswered and is probably unanswerable except from perhaps the defendant herself—“ violated appellant’s constitutional and statutory rights not to testify because it informed the jury that there was one question in the case that probably only appellant could answer.
(footnote: 29)  For this same reason, this comment was clearly erroneous.
(footnote: 30)
 Guerrero’s other statement presents a much closer call.  At the habeas hearing, Guerrero testified that his other statement, “Maybe she said, I’ll fix you” did not refer to appellant’s possible testimony, but to testimony that the State planned to present through Nurse Donna McIver, one of appellant’s co-workers.  Guerrero testified that McIver had allegedly overheard appellant say, “I’ll fix you” while overseeing the “ornery” patients that she was accused of killing.  Guerrero stated that “maybe she said” referred to what appellant had said while working at the hospital, not to what she might say at trial.  Guerrero acknowledged that he did not define who would be saying what, but testified that he “felt comfortable,” given the context of his remarks, that the jury would understand that this testimony would come from the patients’ families and people who worked at the hospital. 

The context of Guerrero’s comment was,

You’re also going to hear that some of these patients were not the easiest patients to deal with.  Some were kind of ornery.  Maybe they said the wrong thing to her.  Maybe she said, I’ll fix you.

We do not believe this comment or its context informed the jury whether appellant or someone else would be the source of this information.  Thus, the comment was, at most, an indirect or implied allusion to appellant’s right not to testify and did not violate her right to remain silent.
(footnote: 31)  Further, even assuming that the comment was a direct comment on appellant’s right not to testify, and therefore improper, as we discuss more fully below, Guerrero provided a reasonable, good faith explanation for his conduct.

Did the Prosecutor Provide a Reasonable, Good Faith Explanation For His Conduct?  Was There a Legally or Factually Plausible Basis For It?

At the hearing, Guerrero testified at length regarding why he had made the improper comments.  He testified that, at the time of trial, he’d been licensed to practice law for sixteen months and had never made an opening statement in a capital murder case, except for this case.  

Regarding the first comment, Guerrero testified that he had not intended to make it at all.  He explained that, when asked by FBI agent David Burns, “Why did you do this?  What did you commit these crimes?” appellant’s response was, “I don’t know.”  The trial court had ruled at a pretrial hearing that this evidence was admissible; therefore, the State planned to use it at trial. According to Guerrero, he was not challenging appellant to testify, and he did not expect her to explain why she had committed the crimes because she had already said that she did not know why.  Instead, the point he wanted to get across to the jury was,

That ultimately, we would never really know why she did it, but then here is the evidence as to why and as a jury, you get to decide.  Maybe she did it for “x” reason, and maybe she did it for “y” reason, but I think regardless of why you think she did it, you’re all going to conclude that she did. 

Thus, Guerrero testified that he had intended to limit his first comment to, “one question [is] going to remain unanswered and is probably unanswerable.”  He explained as follows:

In the heat of the moment . . . I added the “except for perhaps the defendant herself,” something that I did not plan on saying. . . .  I don’t know why.  I wish I hadn’t said it.” 

. . . .

Without a doubt [I believe I could have worded the question better.]  I wish I had stopped at “it’s probably unanswerable” as I intended to instead of adding “except from the defendant herself.”

. . . .

I made a mistake and I regret doing so.

. . . .

I do wish I had worded it differently. 

. . . .

In the heat of an opening statement or in the heat of any part of your life, you say things and do things that you regret later. . . .  Unfortunately, those six words were . . . a mistake that I wish I had not said. 

As further evidence that he had not intended to make the first comment, Guerrero presented the outline of his opening statement and a written opening statement that another, more experienced, trial attorney had provided him as a guide.  Neither of these documents contains any reference to the phrase, “is probably unanswerable except from perhaps the defendant herself.”  Even defense counsel noted, “[O]bviously, the words, ‘except from the defendant herself,’ [are] not in your outline?” 

Further, despite acknowledging the impropriety of the first statement, Guerrero testified that, had defense counsel not objected, 

I don’t even know if I would have caught myself saying it.  Because, you know, it wasn’t something I intended on saying, it came out during the flow of the opening statement.  You’re 15 minutes in and the adrenaline is going, so had you not objected, it may not have even crossed my mind what had just come out of my mouth.

. . . .

And I heard the content of your objection, it was sustained, and then I started thinking, you know, oh, expletive. 

Regarding the second statement, we have previously discussed Guerrero’s explanation for making it—that it was based on evidence that the State intended to present through Nurse McIver, one of appellant’s coworkers.  In addition, Guerrero explained,

The second statement I made was qualitatively different than the first statement.  It was a comment about evidence that would be presented.  So as I’m making that statement, I’m not even—I’m not thinking of it as doing it again [i.e., commenting on the defendant’s right not to testify] because I see this as very different.  The “I’ll fix you,” is something I knew would come into evidence by Mrs. McIver. 

We hold that this evidence supports the trial court’s finding that Guerrero provided a reasonable, good faith explanation for his opening statement comments.  Guerrero was a relatively inexperienced attorney who had never made an opening statement in a capital murder case before.  He repeatedly stated that he had not intended to make the first comment at all, that it was a mistake, and that he wished he had never said it.  The trial court was free to believe this testimony.
(footnote: 32)
 Guerrero also explained that, although he had intended to make the second statement, based on the context in which it was made he did not believe the jury would take it as a reference to testimony that only appellant could provide, and he knew the State intended to offer the evidence through another witness besides appellant.  Accordingly, Guerrero had a factual basis for making the second comment other than to refer to appellant’s possible testimony.

Were the Prosecutor’s Actions Leading Up to the Mistrial Consistent With Inadvertence, Lack of Judgment, or Negligence, or Were They Consistent With Intentional or Reckless Misconduct?

In light of all the factors and evidence we have discussed, we hold that the trial court properly concluded that Guerrero “did not engage in conduct with the intent to goad [appellant] into requesting a mistrial or act with conscious disregard of a substantial risk that the Court would be required to declare a mistrial.”  At the time the mistrial was declared, Guerrero had made only two comments that the trial court had ruled were improper comments on appellant’s right not to testify.  One of those comments was clearly improper, but Guerrero testified that he had not intended to make it and wished he had never said it.  The other comment had a factual basis and was not of such a character that the jury naturally and necessarily would have considered it to be a comment on appellant’s right not to testify.
(footnote: 33)
 Further, the record shows that the trial was not going badly for the State when the comments were made.  Indeed, Guerrero testified that he and co-counsel liked the jury they had chosen, that they were “were confident with the case” and “ready to go forward,” and that “the last thing [he] ever wanted to do was mess this thing up.” 

In short, the evidence presented at the habeas hearing shows that Guerrero’s improper conduct was a prosecutorial blunder that was the result of inadvertence, sloppiness, or even simple negligence.
(footnote: 34)  Therefore, we hold that the trial court did not abuse its discretion by concluding that appellant’s retrial will not violate federal and state double jeopardy protections and by denying appellant habeas relief.

We overrule appellant’s point and affirm the trial court’s judgment.

PER CURIAM

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 6, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The trial court made the following findings of fact and conclusions of law, among others:

FINDINGS OF FACT

7.  That on March 14, 2005, Assistant Attorney General Ralph Guerrero made the opening statement for the State of Texas and that he had never before given an opening statement or participated in a capital murder trial.

. . . .

13.  That Mr. Guerrero, a Yale graduate, and a member of the Attorney General’s Prosecutor’s Assistance Unit, knew the provisions of the Texas and U.S. Constitutions and Texas Code of Criminal Procedure, regarding the Applicant’s right not to testify and his duty not to make statements that might violate Applicant’s fifth amendment rights.

. . . .

15.  Mr. Guerrero testified at the hearing [on the petition for writ of habeas corpus] and explained his thought process and intentions when he made the comments during opening statement.

. . . .

25.  The statements by Mr. Guerrero were not a reaction to a trial that was going badly for the State.

. . . . 

26.  Mr. Guerrero provided a reasonable, good faith explanation for his opening statement comments during his testimony in the writ hearing.

CONCLUSIONS OF LAW

1.  The statements made by Mr. Guerrero were not manifestly improper but were the result of inadvertence or an enthusiastic trial presentation by a relatively inexperienced trial attorney.

2.  Mr. Guerrero did not engage in the conduct with the intent to goad the Applicant into requesting a mistrial or act with conscious disregard of a substantial risk that the Court would be required to declare a mistrial. 

3:
Oregon v. Kennedy,
 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982); 
Bauder v. State,
 921 S.W.2d 696, 698 (Tex. Crim. App. 1996) [
Bauder I
]; 
see
 
U.S. Const.
 amend. V (“nor shall any person be subject to the same offence to be twice put in jeopardy of life or limb”); 
Tex. Const.
 art. I, § 14 (“No person, for the same offense, shall be put twice in jeopardy of life or liberty.“)
.

4:
Ex parte Peterson,
 117 S.W.3d 804, 810-11 (Tex. Crim. App. 2003).

5:
Kennedy,
 456 U.S. at 675-76, 102 S. Ct. at 2089.

6:
Bauder I,
 921 S.W.2d at 699; 
see Peterson,
 117 S.W.3d at 814.

7:
Peterson,
 117 S.W.3d at 817.

8:
Id.
  It is the right to appeal, not the double jeopardy clause, that protects defendants from trial error.  
Id.
  “The double jeopardy clause serves not to punish prosecutorial misconduct; it simply ensures that the defendant, not the government, gets to choose whether to go to verdict.”  
Id.

9:
State v. Lee,
 15 S.W.3d 921, 923 (Tex. Crim. App. 2000) (quoting
 Ex parte Bauder,
 974 S.W.2d 729, 732 (Tex. Crim. App. 1998) [
Bauder II
]).

10:
Peterson,
 117 S.W.3d at 816-17.

11:
Id.
 at 818.

12:
Id.

13:
Id.
 at 818-19.

14:
Id.
 at 819.

15:
Guzman v. State,
 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The trial court may accept or reject any or all of a witness’s testimony.  
Alvarado v. State,
 853 S.W.2d 17, 23 (Tex. Crim. App. 1993).  Further, although findings are not required, “a trial judge is well-advised to set out his factual findings on the record in support of his ruling on a . . . double jeopardy motion . . . so that [the court’s] ultimate factual and legal conclusions are clear to the parties and the reviewing courts.”  
Peterson,
 117 S.W.3d at 818.

16:
Guzman,
 955 S.W.2d at 89
.

17:
Id.; see Peterson,
 117 S.W.3d at 819.

18:
In assessing this factor, we do not consider any comments that preceded appellant’s objections or to which appellant’s objections were overruled, because they are not “misconduct repeated despite admonitions from the trial court.”  
Peterson,
 117 S.W.3d at 818.  Likewise, we do not consider statements to which appellant objected for reasons other than the ground on which the mistrial was requested and granted—particularly if they were not raised in the trial court as grounds for granting habeas relief.  
See Wead v. State,
 129 S.W.3d 126, 130 (Tex. Crim. App. 2004) (holding that a complaint on appeal must be the same as that raised at trial).

19:
Bustamante v. State,
 48 S.W.3d 761, 764 (Tex. Crim. App. 2001); 
see 
Tex. Code Crim. Proc. Ann.
 art. 38.08
 
(Vernon 2005). 

20:
Bustamante,
 48 S.W.3d at 764
.

21:
Tex. Code Crim. Proc. Ann.
 art. 38.08; 
see Bustamante
, 48 S.W.3d at 765; 
Fuentes v. State
, 991 S.W.2d 267, 275 (Tex. Crim. App.), 
cert. denied
, 528 U.S. 1026 (1999).

22:
Bustamante
, 48 S.W.3d at 765; 
Swallow v. State
, 829 S.W.2d 223, 225 (Tex. Crim. App. 1992).

23:
Bustamante,
 48 S.W.3d at 765.

24:
Wead
, 129 S.W.3d at 130; 
Patrick v. State
, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995), 
cert. denied
, 517 U.S. 1106 (1996).

25:
Fuentes
,
 991 S.W.2d at 275
; 
Wolfe v. State
, 917 S.W.2d 270, 279 (Tex. Crim. App. 1996); 
Madden v. State
, 799 S.W.2d 683, 700 (Tex. Crim. App. 1990), 
cert. denied
, 499 U.S. 954 (1991).

26:
Nethery v. State
, 692 S.W.2d 686, 703 (Tex. Crim. App. 1985), 
cert. denied
, 474 U.S. 1110 (1986); 
see Lee v. State,
 628 S.W.2d 70, 71 (Tex. Crim. App. [Panel Op.] 1982) (holding prosecutor’s argument that only defendant knew
 his motive for illegally possessing firearm was improper comment on defendant’s failure to testify), 
abrogated on other grounds
,
 Madden v. State,
 799 S.W.2d 683 (Tex. Crim.App. 1990); 
Myers v. State,
 573 S.W.2d 19, 20-21 (Tex. Crim. App. [Panel Op.] 1978) (holding prosecutor’s argument that only defendant or his codefendant knew defendant’s possible motive for possessing 269 pounds of marijuana was improper comment on defendant’s failure to testify).

27:
Appellant acknowledges that “[m]otive may, of course, be appropriately argued if supported by competent evidence.”  
See Newhouse v. State,
 420 S.W.2d 729, 731-32 (Tex. Crim. App. 1967) (holding prosecutor’s opening statement that “the only reason the defendant did this was because [the victim] had gotten herself a better man” was proper because it was supported by testimony from victim’s brother later presented at trial);
 see also Plunkett v. State,
 580 S.W.2d 815, 825 (Tex. Crim. App. 1979) (op. on reh’g) (holding prosecutor’s closing argument that accused may have killed child because child interfered with relationship between accused and child’s mother was proper as an inference from the evidence), 
disagreed with on other grounds, Williams v. State,
 630 S.W.2d 640, 644 (Tex. Crim. App. 1982); 
 
Bellah v. State,
 641 S.W.2d 641, 644 (Tex. App.—El Paso 1982) (holding prosecutor’s closing argument that defendant killed victim because he enjoyed killing was a reasonable inference from the evidence), 
aff’d,
 653 S.W.2d 795 (Tex. Crim. App. 1983).

28:
Further, Guerrero testified that at the time he made the comment, he “had no idea” whether appellant would testify at trial.  He testified that defense counsel had “intimated” that appellant would testify, but that he (Guerrero) did not know whether she actually would.  The trial court found that, “[a]t the time that Mr. Guerrero made his opening statement the Applicant had not made the decision as to whether to exercise her right to refuse to testify[;] therefore, neither the State nor the jury could have been aware of whether she would or would not exercise that right.”  Appellant does not challenge this finding on appeal.

29:
See Fuentes,
 991 S.W.2d at 275; 
Madden,
 799 S.W.2d at 700 (both holding that a comment is improper if it directs the jury’s attention to information that only the defendant could supply).

30:
Peterson,
 117 S.W.3d at 819; 
see Lee,
 15 S.W.3d at 925-26 (holding that an improper comment regarding the defendant’s desire to remain silent was not clearly erroneous when based on an unsettled area of the law).

31:
See Wead,
 129 S.W.3d at 130; 
Patrick,
 906 S.W.2d at 490-91.

32:
See Alvarado,
 853 S.W.2d at 23.

33:
See Bustamante,
 48 S.W.3d at 765; 
see also Plunkett,
 580 S.W.2d at 825
; Newhouse,
 420 S.W.2d at 731-32; 
Bellah,
 641 S.W.2d at 644 (all holding that an argument regarding an accused’s possible motive is not improper if it refers to evidence other than the accused’s testimony).

34:
See Peterson,
 117 S.W.3d at 817.